CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

DEC 0 9 2008

JOHN F. CORCORAN, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WALTER M. CHEATLE,<br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Defendant.* | CIVIL NO. 3:07CV00062<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the United States' Motion for Summary Judgment (docket no. 13) and Walter Cheatle's Motion for Partial Summary Judgment (docket no. 16). On November 16, 2007, Cheatle ("Plaintiff") filed a Complaint (docket no. 1) against the United States ("Defendant") to recover penalties and interest that he claims was erroneously and wrongfully collected by Defendant in connection with his payment of employment taxes on behalf of Growers of Culpeper, Inc ("Growers"). Defendant counterclaimed (docket no. 2) and later filed a Motion for Summary Judgment, seeking to recover a trust fund recovery penalty ("TFRP") from Plaintiff for Growers' unpaid taxes in the amount of $150,155.57 plus interest accruing after June 2, 2008, pursuant to 26 U.S.C. § 6672. Plaintiff, while not acknowledging the validity of the tax liability claimed by Defendant, then filed a Motion for Partial Summary Judgment requesting that the Court credit his alleged tax liability with a TFRP payment made by James Soelder, the former President of Growers, in the amount of $44,011.24, plus interest accruing after September 27, 1999. For the reasons discussed below, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is GRANTED.

## I. BACKGROUND

Growers owned and operated a six-acre greenhouse in Stevensburg, Virginia. The company grew and sold various plants at wholesale prices to retail stores. In the early 1990s, Growers was owned and operated by Arie Boot, James Soelder, and Peter Chaconas. Boot was President and a member of the Board of Directors. When Boot resigned from his positions in 1992, Soelder and Chaconas purchased his interest, leaving them each with fifty percent ownership in the company. Chaconas then hired Plaintiff, who was elected to the Board of Directors and served as Secretary and Treasurer of Growers. Soelder served as President, and Chaconas served as Vice President. Because Chaconas was largely an absentee owner who secured the initial financing for Growers in exchange for his ownership interest, Soelder and Plaintiff partnered in the day-to-day management of the company. While Soelder focused on growing plants and ensuring their shipment to customers, Plaintiff primarily promoted sales, sought out new customers, and oversaw the financial management of the company. The extent of Plaintiff's involvement with Growers will be explained in much greater detail below.

In 1995, Growers withheld income and employment taxes from its employees but failed to remit the taxes to the Internal Revenue Service ("IRS") for January, February, March, August, September, and parts of April. Plaintiff was aware of these outstanding tax liabilities as they accrued. In the fall of 1995, a dispute between the owners of Growers caused the company to file for bankruptcy. Growers never paid its outstanding tax liability for 1995. Unable to recover the withholding taxes from Growers, Defendant assessed a TFRP against both Soelder and Plaintiff in 1998. On February 2, 1999, Soelder agreed to pay $44,011.24 of the TFRP. The IRS erroneously refunded the $44,011.24 to Soelder on April 3, 2006 and is now suing him to

2

retrieve the refund. Plaintiff claims he never received the letter proposing to assess the TFRP because it was sent to as address at which he no longer resided.

Defendant claims it is entitled to summary judgment against Plaintiff in the amount of $150,155.57, plus interest accruing after June 2, 2008, because Plaintiff was a responsible officer who willfully failed to collect, truthfully account for, and pay over Growers' withholding taxes. While in no way acknowledging the validity of the alleged tax liability, Plaintiff moves the Court to grant partial summary judgment in his favor crediting Soelder's $44,011.24 payment towards the TFRP assessment, plus interest accruing as of September 27, 1999.

## II. Applicable Law

### A. Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

B. TRUST FUND RECOVERY PENALTY

Federal law requires employers to withhold federal income and social security taxes from employee wages and pay those taxes into the U.S. Treasury. 26 U.S.C. §§ 3102, 3402, 7501. Because the employer holds the taxes in trust for the United States, the taxes are typically called "trust fund taxes." *See Slodov v. United States*, 436 U.S. 238, 243 (1978). Such taxes are for the exclusive use of the Government and "are not to be used to pay the employer's business

4

expenses, including salaries." *Gephart v. United States*, 818 F.2d 469, 472 (6th Cir. 1987). Under 26 U.S.C. § 6672, the Government is permitted to collect a TFRP from "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof."[1]

Liability under 26 U.S.C. § 6672 requires proof that the employee (1) was a "responsible person" with a duty to collect, account for, and pay over trust fund taxes, and (2) willfully failed to discharge his duty as a responsible person. *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992). Because the United States' tax assessments are presumptively correct, *see United States v. Flor D'Italia, Inc.*, 536 U.S. 238, 242-43 (2002), an employee assessed with a TFRP must "demonstrate that he was not a responsible person or that his failure to pay the taxes was not willful." *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980).

### III. DISCUSSION

#### A. "RESPONSIBLE PERSON" UNDER § 6672

To determine whether an employee is a "responsible person" under § 6672, courts "undertake a pragmatic, substance-over-form inquiry into whether an officer or employee so 'participated in decisions concerning payment of creditors and disbursement of funds' that he effectively had the authority—and hence a duty—to ensure payment of the corporation's payroll taxes." *Plett v. United States*, 185 F.3d 216, 219 (4th Cir. 1999) (quoting *O'Connor v. United States*, 956 F.2d 48, 51 (4th Cir. 1992)). "Stated differently, the 'crucial inquiry is whether the person had the effective power to pay the taxes—that is, whether he had the actual authority or

---

[1] Section 6672(a) reads: "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672(a).

5

ability, in view of his status within the corporation, to pay the taxes owed.'" *Id.* (quoting *Barnett v. Internal Revenue Serv.*, 988 F.2d 1449, 1454 (5th Cir. 1993).

While a "responsible person" must have significant control over the company's finances, "*exclusive control* is not necessary." *Hagen v. United States*, 485 F. Supp. 2d 622, 628 (D. Md. 2007) (emphasis in original) (citing *Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir. 1994)). Furthermore, "the 'responsible person' is not limited to one person in a company but rather may include many persons connected with the same employer." *Plett v. United States*, 185 F.3d 216, 219 (4th Cir. 1999); *see also Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir. 1992) (stating that § 6672 casts a "broad net" over many persons in imposing liability for delinquent payroll taxes). Section 6672 "applies to all responsible persons, not *just the most responsible* person." *Hagen*, 485 F. Supp. 2d at 628 (emphasis in original) (citing *Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir. 1991)). Thus, Soelder's status as a "responsible person" is not an impediment to Plaintiff's status as the same.

Several factors that courts look to when determining whether an employee is a "responsible person" under § 6672 include whether he or she:

> (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees.

*Plett*, 185 F.3d at 219. The six factors must be evaluated together, as no single factor is dispositive. *Id.* (citing *Barnett v. I.R.S.*, 988 F.2d 1449, 1455 (5th Cir. 1993)). Without the six *Plett* factors, an employee could defeat summary judgment by simply claiming that he lacked the authority to pay his company's payroll taxes. The factors help courts conduct a more probative analysis of the indicia of "responsible person" status. Thus, an examination of the *Plett* factors in Plaintiff's case is an excellent starting point for discussion.

6

First, it is undisputed that Plaintiff, as Secretary and Treasurer, was one of only three officers for Growers. He also served on the company's Board of Directors. While Plaintiff claims that he lacked real authority and was an officer and director by title only, the evidence in the record suggests otherwise—as an analysis of the remaining *Plett* factors will show.

Second, there is no genuine dispute concerning Plaintiff's control over Growers' payroll. Soelder, Chaconas, and Growers' bookkeeper, Karen King, all unequivocally stated in deposition testimony that Plaintiff controlled the company payroll.[2] In his own deposition, Plaintiff does not deny controlling the payroll. In response to interrogatories from Defendant, Plaintiff also admitted to signing payroll checks in 1995 at a time when he was aware that Growers had outstanding payroll tax liabilities. According to Plaintiff, the fact that he could not fire Chaconas or Soelder, combined with the fact that Soelder signed checks for the payment of delinquent payroll taxes in July 1995, creates a genuine dispute over the payroll factor. These facts alone, however, are insufficient, especially given the fact that *significant* control over payroll should be sufficient for § 6672 liability to attach as a matter of law—exclusive control is not necessary. *See Hagen*, 485 F. Supp. 2d at 628; *Greenberg*, 46 F.3d at 243.

Third, the evidence in the record overwhelmingly suggests that Plaintiff was significantly involved in determining which creditors to pay and when to pay them. It not disputed that Plaintiff had the authority to individually cut checks for amounts under $3,000 on behalf of Growers and frequently exercised that authority. In his deposition, Plaintiff admitted to being able to pay bills under this amount and even working out alternate payment arrangements with creditors when bills were late. Soelder and Chaconas both testified that Plaintiff had the

---

[2] In his Memorandum in Opposition, Plaintiff claims that Defendant mischaracterizes the testimony of King, implying that she was somehow coached through a confusing syllogism by Defendant's counsel. An examination of the record, however, does not support such a conclusion. When asked whether Plaintiff had "any responsibilities over the accounts receivable, the accounts payable, (and) payroll," King responded "Oh, he -- yes. He was over all of it." When again asked whether Plaintiff "was responsible for the payroll for Growers," King responded "Yes. He

7

authority to direct the payment of bills and put off paying bills until there was sufficient cash. O.R. Barham, a Senior Loan Officer for Growers' bank, stated that Plaintiff was the bank's "first point of contact" when there were problems concerning late payments. King testified that Plaintiff "oversaw all the business of the company and okayed paying the bills." In 1993, Plaintiff drafted a letter on behalf of Growers to the IRS proposing an alternative arrangement of installment payments to pay off the company's back taxes. While Plaintiff could not authorize payments for more than $3,000 without the co-signature of Soelder, there is no dispute that he was significantly involved in discussions as to which bills over that amount the company would pay. In his deposition, Plaintiff admitted meeting with Soelder to discuss Growers' accounts payable list to figure out "who we wanted to pay." Plaintiff would speak to Growers' vendors and then discuss which bills should be paid with Soelder. An employee need not have the final say about which creditors to pay: significant control over disbursements is sufficient for § 6672 liability to attach. *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir. 1978); *Gephart*, 818 F.2d at 475. The fact that Plaintiff played a significant role in making these decisions, even if he did not have the ultimate say, is therefore sufficient. Finally, upon learning of the outstanding tax liability, Plaintiff could have refused to sign checks to non-governmental creditors until the liability to Defendant was satisfied. Instead, Plaintiff co-signed on a number of checks for substantial amounts, including a $200,000 check to Express Seed, and individually signed checks for under $3,000 when he knew of Growers' outstanding payroll tax liability. This exhibited preference for non-governmental creditors over the United States supports § 6672 liability as a matter of law. *See Plett*, 185 F.3d at 222. Given the totality of this evidence, there is no genuine dispute that Plaintiff had the power to determine which creditors to pay and when.

Fourth, there is no genuine dispute that Plaintiff significantly participated in the day-to-

---

was my boss." King Dep. 29:8-30:4.

day management of Growers. Plaintiff concedes that he had managerial responsibilities over Growers' sales department, including one of Growers' salesmen, Pete Nelson. In this capacity, Plaintiff was also responsible for acquiring new customers and managing customer relations with large customers like Wal-Mart, Safeway, and Giant Foods. Evidence in the record also indicates that Plaintiff entered into one or more security agreements with suppliers, signed tax returns on behalf of Growers, and acted as the main contact with Growers' accounting firm. As stated above, Plaintiff's own testimony indicates that he participated in discussions about which creditors to pay and when, authorized the payment of bills, and attempted to negotiate extended terms from a creditor. King testified that Plaintiff ran "the business end of the company." Barham stated that Plaintiff "was in charge of the day-to-day financial management of the company." Joseph Daniel, a prospective investor in Growers and the purchaser of Growers' assets in bankruptcy stated that Plaintiff "was responsible for the day-to-day financial management of the company." Even Plaintiff admitted that "[i]t was really a joint effort between Jim [Soelder] and myself, as far as day-to-day management" of Growers. The fact that, as Plaintiff claims, Soelder may have had the ultimate authority to make major decisions does not necessarily mean that Plaintiff was also involved in the day-to-day management of the company. Given the overwhelming quantum of evidence of Plaintiff's involvement in the management of Growers, there can be no genuine dispute concerning this *Plett* factor.

Fifth, it is not disputed that Plaintiff could individually authorize checks for under $3,000 on Growers' behalf and often did so. While Plaintiff could not individually authorize a check for over $3,000, neither could Soelder. Checks for amounts over $3,000 required the signature of both officers. The inquiry under *Plett* is whether the employee had the power to write checks, not whether the employee had the power to write checks over a certain amount. Accordingly, there is no genuine dispute that Plaintiff had the power to write checks on behalf of Growers.

9

Sixth, the record indicates that Plaintiff had the ability to hire and fire employees at Growers. King and Soelder both testified that Plaintiff hired King as Growers' bookkeeper. Soelder and Chaconas stated that Plaintiff had the ability to hire and fire employees. While Plaintiff did not admit to hiring King or Nelson, he did admit to being involved in the interviewing process for both employees. Contrary to Plaintiff's assertion, the mere fact that Plaintiff never actually hired or fired anyone at Growers does not mean that he lacked the *ability* to hire or fire employees.

The six *Plett* factors weigh heavily in support of a conclusion that there is no genuine dispute that Plaintiff so "participated in decisions concerning payment of creditors and disbursement of funds that he effectively had the authority…to ensure payment" of Growers' payroll taxes. *See Plett*, 185 F.3d at 219. Still, Plaintiff argues that regardless of the *Plett* factors, summary judgment is inappropriate, as there is a genuine dispute as to whether he had the actual ability to pay Growers' payroll taxes because: (1) the monthly payroll tax liability was for amounts over $3,000 and he lacked the ability to cut checks for $3,000 on his own; and (2) he was following Soelder's directions not to pay the payroll taxes. Similar arguments have been entertained and rejected as a matter of law in several other circuits, and neither point creates a genuine dispute concerning Plaintiff's ability to pay the payroll taxes.

As to the first point, even though the monthly payroll tax liability exceeded $3,000 and Plaintiff lacked the authority to cut checks for such large amounts on his own, he could have cut several checks in denominations of $3,000 or less to Defendant in order to satisfy the liability. Even Plaintiff concedes this point. Under Plaintiff's line of reasoning, no one at Growers would have had the actual authority to pay the payroll taxes, since all checks over $3,000 required two signatures and Soelder could not have individually authorized such amounts either. For this same reason, numerous federal courts have squarely held that Plaintiff's "co-signatory defense" fails

10

as a matter of law. *See, e.g., Thomas v. United States*, 41 F.3d 1109, 1114 (7th Cir. 1994) (ability to refuse a co-signature is sufficient as a matter of law for purposes of § 6672 liability because a refusal to co-sign would prevent payroll from going forward until withholding taxes are paid); *Godfrey v. United States*, 784 F.2d 1568, 1576 (Fed. Cir. 1984) ("where a person has authority to sign the checks of the corporation, or to prevent their issuance by denying a necessary signature…he will generally be held 'responsible.'"); *Bolding v. United States*, 565 F.2d 663, 671 (Ct. Cl. 1977); *Beeler v. United States*, 894 F. Supp. 761 (S.D.N.Y. 1995). Holding otherwise would allow responsible officers to insulate themselves from liability by merely requiring co-signatures on all authorized accounts. The fact that Plaintiff needed a co-signature to authorize checks for over $3,000 does not create a genuine dispute concerning his effective ability to pay the payroll taxes on behalf of Growers.

Plaintiff's second point—that he lacked the actual ability to pay the taxes because he was merely following Soelder's directions—was rejected in *Plett* in light of overwhelming evidence to the contrary. *Plett*, 185 F.3d at 221 (Plett claimed that he could exercise no independent judgment to make financial decisions and was merely doing "as he was told."). Other courts have also rejected such a defense. *See, e.g., Brounstein v. United States*, 979 F.2d 952, 955 (3d Cir. 1992) ("Instructions from a superior not to pay taxes do not…take a person otherwise responsible under section 6672(a) out of that category."); *Gephart*, 818 F.2d at 474-75; *Roth v. United States*, 779 F.2d 1567, 1571-72 (11th Cir. 1986); *Howard v. United States*, 711 F.2d 729, 734 (5th Cir. 1983). Consequently, in light of the overwhelming indicia of his authority within Growers as outlined above, Plaintiff's claim that he was merely following the orders of his superior is insufficient to create a genuine dispute concerning his ability to pay the payroll taxes.

Finally, the similarity of the facts of *Plett*, where the Fourth Circuit affirmed a district court order granting summary judgment in favor of the Government under § 6672, to this case

further illustrates why summary judgment in Defendant's favor is appropriate. In *Plett*, two individuals (Plett and Crutcher) operated a hair salon on a day-today basis. A third individual (Santarelli) helped secure the initial financing for the salon but delegated the management decisions to Plett and Crutcher. *Plett*, 185 F.3d at 220. While Plett did not hold an equity interest in the salon, he served as its Secretary. Plett and Crutcher paid the salon's creditors and employees in the ordinary course of business. Even when the salon's bookkeeper informed Plett and Crutcher that federal payroll taxes were outstanding, Plett continued to sign checks to pay the salon's non-governmental creditors and employees. *Id*. When the Government assessed a TFRP against Plett, he claimed that he could not be liable because he lacked independent control over the salon's financial activities and was merely doing "as he was told" when he paid non-governmental creditors with knowledge of the salon's outstanding payroll tax liability. *Id.* at 221. However, relying on the fact that Plett was an officer of the salon, controlled its payroll, paid non-governmental creditors in lieu of the Government, was responsible for the day-to-day operations of the salon, and had the power to sign checks and hire and fire employees, the Fourth Circuit held that Plett was a "responsible person" as a matter of law. *Id.* at 222.

The similarities between Plett's role at the salon and Plaintiff's role at Growers are striking. Both Plaintiff and Plett lacked equity interests in their respective companies and served as officers. Both signed financial documents on behalf of their companies. Plaintiff signed checks, corporate income tax returns, payroll tax returns, a power of attorney, one or more credit applications, a security agreement, and terms of engagement with Growers' accounting firm. Both continued to sign checks to non-governmental creditors at times when they knew payroll taxes were outstanding.

Furthermore, several differences between the facts of this case and the facts of *Plett* suggest that summary judgment is even *more* appropriate here. Plett claimed he was designated

12

Secretary of the salon without his knowledge and did not serve on the Board of Directors, but Plaintiff clearly knew of his officer roles at Growers and served on the Board of Directors. While Plett was a hairdresser with no previous background in business or finance, Plaintiff had a law degree and was brought into Growers partly because of his significant business background. Plett was relatively low-paid, making $20,000 to $30,000 as a hairdresser. Plaintiff, by contrast, made $90,000 to $100,000 in 1995—a salary commensurate with that of Soelder, Growers' President.

The facts of this case thus cannot be reasonably distinguished from the facts of *Plett*. Both the *Plett* factors and the actual facts of *Plett* demonstrate that there is no genuine dispute concerning Plaintiff's status as a "responsible person" under § 6672. Because there is no genuine dispute that Plaintiff had the actual authority and duty to pay the taxes owed to Defendant, the next inquiry is whether Plaintiff's failure to remit the taxes was "willful."

### B. "WILLFULNESS" UNDER § 6672

For liability to attach under § 6672, an employee must not only be a "responsible person," he must also "willfully" fail to discharge his duty to collect, account for, or pay over trust fund taxes to the United States. *Turpin*, 970 F.2d at 1347. Willfulness may be established by a responsible person's "actual or constructive knowledge that taxes were unpaid." *Id.* A responsible person's preference of other creditors over the United States also establishes willfulness under § 6672. *Pomponio*, 635 F.2d at 298, n. 5.

Plaintiff testified that he first learned about Growers' outstanding tax liability in 1995 and was aware of the liability as it was accruing. Plaintiff also stated, "If the January [1995] withholding tax payment was not made, I – I would more than likely, would have known about it." In response to Defendant's first request for admissions, Plaintiff admitted that he "signed one or more payroll checks during 1995 at a time when [he was] aware that Growers had outstanding payroll tax liabilities for 1995." In light of this evidence, there can be no genuine dispute that

13

Plaintiff displated actual knowledge that Growers' taxes were going unpaid and was "willful" as a matter of law.

Furthermore, King testified that she would take payroll checks and checks to cover Growers' withholding taxes to Plaintiff for his signature. Payroll checks were distributed to the employees, and the checks to cover the taxes were eventually taken to the bank by King, Plaintiff, or Soelder. If there were insufficient funds to cover the withholding taxes, Plaintiff admitted that those checks would sit on his desk unsigned until he could get a co-signature. This evidence shows that Plaintiff displayed constructive knowledge of Growers' tax liability and therefore acted "willfully" as a matter of law.

Despite his actual and constructive knowledge of Growers' tax liability, Plaintiff continued to sign checks to non-governmental creditors in preference of the United States on many different occasions. The record shows that, for example, Plaintiff co-signed a check for $200,000 and individually authorized checks for amounts under $3,000 during 1995, when he was aware of Growers' outstanding tax liability. Plaintiff was thus "willful" under § 6672 as a matter of law because there is no genuine dispute that he continued to authorize payments to non-governmental creditors in preference of the United States when he was aware of Growers' payroll tax obligations. Because Plaintiff is a "responsible person" who "willfully" failed to collect, account for, and pay over trust fund taxes as a matter of law, Defendant's Motion for Summary Judgment should be GRANTED.

C. ABATEMENT OF THE TFRP

As previously explained, in 1998, the IRS assessed a TFRP against both Soelder and Plaintiff for Growers' outstanding tax liability. On February 2, 1999, Soelder signed IRS Form 2751-AD, agreeing to pay $44,011.24 of the TFRP. The IRS accepted the form on April 27, 1999. The IRS erroneously refunded Soelder's payment on April 3, 2006 and is now suing him

14

to retrieve the refund. In his Motion for Partial Summary Judgment, Plaintiff argues that the Court should credit Soelder's $44,011.24 payment, plus interest accruing as of September 27, 1999, towards his total alleged liability because Defendant is not entitled to double recovery of the TFRP as a matter of law.

Plaintiff's concern was addressed by the Fourth Circuit in *United States v. Pomponio*, 635 F.2d 293, which implicitly barred double recovery in § 6672 cases. Concluding that the district court erred in dismissing the Government's § 6672 suit against a corporation's responsible officers, the Fourth Circuit remanded with instructions to grant the Government's motion to amend the judgment order. While the district court had previously expressed concern that the Government might obtain a double recovery of the TFRP, the Fourth Circuit held that such fears could "be allayed by including appropriate language in the judgment order." *Id.* at 299. For this reason, and also because counsel for the Government advised that it was the policy of the IRS to collect the amount of the tax only once, the Fourth Circuit did not find it necessary to explicitly prohibit double recovery. But it did note that "[d]ouble recovery by the government is not necessary to fulfill § 6672's primary purpose—protection of government revenues." *Id.* And at least one district court has read *Pomponio* to bar double recovery under § 6672. *See Johnson v. United States*, 203 F. Supp. 2d 416, 425 (D. Md. 2002). The necessary implication of *Pomponio* is that if the Government had claimed the right to double recovery, or if the district court could not bar double recovery by way of its order, then the Fourth Circuit would have barred double recovery.

The Fourth Circuit's take on double recovery in *Pomponio* is consistent with the Court of Claims' holding in *Gens v. United States*, 222 Ct. Cl. 407. In that case, Richard Gens, a "responsible person" under § 6672, claimed that he was entitled to an abatement in the amount of two administrative collections made by the Government against two of his former business

15

associates, who were also "responsible persons" under § 6672. The Court of Claims held that Mr. Gens was not entitled to the claimed abatement because the Government is only required to abate a TFRP assessment once its right to retain an administrative collection is established, and such a right had not been established in Gens' case. *Id.* at 415-16.[3] The right to retain an administrative collection is established "only upon expiration of the statutory period for commencement of a refund suit or, if a refund suit is filed, upon final adjudication of the action." *Id.* at 415 (quoting *Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184, 1185 (S.D. N.Y. 1970).

In this case, the Government's right to retain the administrative collection from Soelder has been established because the statute of limitations within which he could have filed a refund suit has expired. The limitations period for TFRP refund claims is two years. *See* 26 U.S.C. § 6511(a); *Kuznitsky v. United States*, 17 F.3d 1029, 1032-33 (7th Cir. 1994); *USLIFE Title Ins. Ex rel. Mathews v. Harbison*, 784 F.2d 1238, 1243 (5th Cir. 1986). Because Soelder made his payment towards the TFRP in 1999, the statute of limitations expired in 2001. The fact that Defendant erroneously refunded Soelder's payment in 2006, after successful collection, does not make Plaintiff liable for Defendant's mistake. The mistaken refund to Soelder no more gives Defendant a right to recover the same amount from Plaintiff than if Defendant had lost the money through its own carelessness. Once "the Government's right to retain an administrative collection is established," it is "incumbent on the Government to abate, in the amount of the collection, all 100-percent penalty assessments arising from the payroll tax liability." *Gens*, 222 Ct. Cl. at 415-16. Under the rationale of both *Gens* and *Pomponio*, therefore, Defendant must

---

[3] The administrative collection from one of the associates was the subject of a pending refund suit at the time, and the IRS had entered into a settlement with the other associate. To justify its decision to deny Mr. Gens the requested abatement, the Court of Claims relied on the fact that "[n]owhere in the record is there any evidence that the IRS has an established right to retain any collection made from either associate." *Id.* at 414-15.

abate Soelder's payment towards Growers' TFRP in its assessment against Plaintiff. Accordingly, Plaintiff's Motion for Partial Summary Judgment is GRANTED. As a matter of law, Plaintiff should receive a credit in the amount of $44,011.24, plus interest accruing as of September 27, 1999, towards Growers' outstanding tax liability.

## IV. CONCLUSION

Because Plaintiff is a "responsible person" who "willfully" failed to collect, account for, and pay over trust fund taxes as a matter of law, Defendant's Motion for Summary Judgment is GRANTED. However, because Defendant successfully collected $44,011.24 from Soelder in satisfaction of the TFRP, Plaintiff is entitled to receive a credit in the amount of $44,011.24, plus interest accruing as of September 27, 1999, towards Growers' outstanding tax liability. Plaintiff's Motion for Partial Summary Judgment is GRANTED.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

Entered this 9th day of December, 2008.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE